Thank you, Madam Clerk. Welcome to the Ninth Circuit Court of Appeals. My name is Morgan Christen. I'm one of the judges on the circuit court. My chambers are in Anchorage, but I'm delighted to be sitting in Portland this week, sunny Portland this week, with two of my colleagues from Phoenix, Judge Hurwitz and Judge Beatty. We have submitted the first case on the calendar, so we won't hear argument in it. It is case number 25-2517, ANATA versus Oregon Department of Environmental Quality. The first case in which we'll hear argument is the United States versus Bigbeaver 25-5656. And counsel, if you give me one minute to shuffle these papers, we'll be ready to hear your argument. All set? I think we're ready. Good morning. May it please the Court. Clark Matthews for Appellant John Bigbeaver. We ask that you reverse and remand for resentencing as the District Court applied the incorrect guideline provision. So we think the correct guideline was 282.3. The District Court applied the cross-reference in 282.3 to go to 282.2. We think that was a mistake. The District Court did that because of the application note 1 and 282.2. We disagree with the District Court's reading of application note and 282.2. But before we get there, as the Court's precedent in Castillo following Kaiser, we have to first determine whether or not aggravated assault is genuinely ambiguous. Let me try this on you because I think your argument rests entirely on the index. Let me tell you why I think that. And then I want to come back to the index. Of course. If we just look at the guidelines, 2.3 says there's a cross-reference. He said if the conduct would be aggravated assault, apply 2.2. We all agree there's no definition anywhere in the guidelines or anywhere else in federal law about aggravated assault. That's right. So we then look at the, again, putting aside the existence of the index, we would say there's no clear definition. Let's look at what the commentary says. And the commentary says strangulation equals aggravated assault. So now you've got to convince me why that isn't the entire world of my analysis. Why isn't it? Right. So if you look at the beginning of the guidelines, it tells you, right, first, we got to find, you know, to determine the correct guideline provision, you look at the offense of conviction, right? And to determine then which provision you apply, it directs you to the statutory index to apply. Yeah. So that's you must be relying on the index then, correct? If there were no index, would you have any argument at all? Well, I, without the index, would I have any argument about whether or not it's genuinely ambiguous? No, I don't. But I don't know how we take the index out of the, I mean, we always use the end. I mean, every time you get it, we're saying the same thing. Your argument rests on the index. So tell me why the index makes you win. Well, because the index tells you what 2A2.2 means. Right. Because it has statutory offenses that correspond to 2A2.2, and it says this is what aggravated assault means. So what we are then, we are, see, an index doesn't say this is what aggravated assault means. All the index says is that the crime for which your client was convicted is sentenced under 2A3. Right? Yes. And then 2A3 says, 2A3 says when you're to be 2A2, we'll go to 2A2. So it seems to me in terms of the structure of the guidelines, it's pretty simple. Now the question is what constitutes aggravated assault? Right. And you're saying we can only look at the index to determine what constitutes aggravated assault? No, I'm not saying, I'm saying the index tells us what 2A2.2 means. Why don't you walk us through your analysis? Just walk us through. Right. So 2A2.2 can be understood by which statutory offenses are assigned to it, right? That's what defines aggravated assault for this purpose, right? These, and these statutory offenses have elements that need to be proven, and that is what makes up the definition. Well, but my problem with that is that 2A3, which is the one that you think applies. Correct. Says it doesn't apply if the conduct would constitute aggravated assault. So even though the index refers you to that one, there's a cross-reference in the guideline itself, not in the commentary. That's right. Which says this guideline directs you to the other one if it was aggravated assault. Right. I think that that's, that's can be explained by a, the common situation we see, right? Where somebody's charged with multiple assaults, right? They plead to one offense, like for example, assault resulting in substantial bodily injury, that corresponds to 2A2.3. But they were also charged with assault involving strangulation. But the cross-reference doesn't say charged with or pleaded to. And in fact, the guidelines are built around your conduct. And what the cross-reference says, if the conduct would constitute aggravated assault, then we apply 2A2. And so where are we missing each other here? So a guideline provision is not resolving around the conduct. A guideline section, right? A guideline section refers to the offense of conviction, right? That's why I think that's... Actually, this section doesn't. That's what we see. This section talks about if the conduct would constitute aggravated assault. It doesn't say if the crime of conviction would. I agree with you, but I'm saying what in the... I understand from the Castillo and Kaiser, we're supposed to really endeavor to try to find out what something means before we go to the commentaries, supposed to put in some work here. Fair enough. And a guideline section, right? Which 2A2.2, the guideline section, that refers to offenses of conviction, right? You don't get to the section itself unless there's an offense of conviction. And that's why I think the statutory index defines what 2A2.2 is. So you're keying to conduct, not to the elements. Judge Beatty's trying to ask a question. Of course. I'm sorry. So would that render the cross-reference superfluous? No, because it is, right? If somebody's charged with multiple offenses in a case, right? They plead to one and another one gets dismissed, right? But the other offense would correspond to 2A2.2. And if the government can prove that that offense exists, that's where the cross-reference works. The problem here is he couldn't have been charged with an offense based on this conduct with something that triggers 2A2.2. That's where we see it. But I also think it's important to kind of consider what exactly this definition is saying. Because, you know, that's where, you know, there's a real expansion here of what is covered by 2A2.2 in this definition. And there's no explanation. There's no acknowledgement that that's what they're doing. And that's why we think it shouldn't also be given deference, because there's no explanation. Hey, this is going to — we're going to sweep in more conduct, right? The commentary is just saying, hey, look, you know, this is — we're making these changes in response to these new statutory offenses. We're assigning this one to 2A2.2. We're changing the definition. There's no further discussion with that. Sir, can I interrupt? We understand your argument, and I'm just worried about — do you want to save some time? I forgot to mention I would love to save two minutes. That's why I'm here. Have a seat. All right. Thank you. All right. May it please the Court. Tim Tatarka of the District of Montana on behalf of the United States. I'll just jump right into the issue of why the — looking to the index of the guidelines can't help in terms of determining whether or not aggravated assault — the term aggravated assault is ambiguous as used in the guidelines. There's a number of problems with that, but we think the primary one, or at least one that is obvious, is there are 41 different statutory references in the index that go to 2A2.2. But of those, all but eight include reference to another guideline as well. And 31 involve a different assault guideline. So in those cases, the Court is required to look to determine — look to the conduct to determine what whether the conduct covers — is more in line with 2A2.2 or 2A2.3, for example. I'm having trouble with that. So let me tell you, if there were no cross-reference in 2A3, would you have an argument? Oh, so — I mean, if there just was 2A3 and 2A2, and he was convicted of sub 7, would you have to apply 2A3? If we were just talking about the offense of conviction, then — I'm talking about take out the cross-reference. Let's assume there's no cross-reference in 2A3. Yeah. If there was no cross-reference — No cross-reference, you could only apply 2A3, or could you not? Because you'd only be looking at that offense of conviction. That's right. But now we have a cross-reference that says you may look at conduct. So it seems to — your case turns on the existence of the cross-reference, does it not? Absolutely. Okay. Now, what he says is — and I want you to — that's the way I'm getting to respond to him. He says the cross-reference doesn't do enough duty here because what it essentially does is expands the scope of 2A2. Well, and I might be misunderstanding Appellant's argument. My understanding, at least from the reply brief, is the Appellant's argument was you have to look to the elements that — basically, that aggravated assault is defined as the elements of whatever crime is listed in the appendix. That's another way to put it. But the point — his point, he'll take it, is that you — 2A2 says — 2A2 has an index that doesn't include this crime, and 2A3 has an index that does. And so in the absence of the cross-reference, I think his argument would be compelling. So I'm trying to figure out what work the cross-reference does. Well, I think the — well, the work that the cross-reference does is it does direct you to 2A2.2. And that's — or it requires — exactly as you said, it requires the court to look to the conduct. Okay. So now if we look to 2A2, the long way of asking the question, we now have the question is why do we apply the commentary? Because — and this is where I tried to start — we apply the commentary because the term aggravated assault is ambiguous. Aggravating means to make more serious, and depends on the context that that's in. There has to be some definition of aggravated assault to apply to get past that ambiguity, to determine what aggravated assault means. And the commentary definition is the right place to look for that. We get past perhaps Kaiser's step one because it's ambiguous. How do you satisfy Kaiser's steps two and three? So step two is that the guideline definition or the commentary definition is reasonable. We think there's no question here that this is — that it was reasonable for the guideline — for the commission to include this as one of the aggravating circumstances. That this is strangulation. This is strangulation, yes. To include strangulation as one of the aggravating circumstances. The guidelines explains that — Amendment 781 explains that the commentary — or that the guideline changes were in response to Congress's recognition of the important — the seriousness of strangulation. Violence against women. It's part of the Violence Against Women Act reauthorization.  And the amendment makes clear that it — that the commission was looking at domestic violence situations beyond just strangulation of a partner. And that's clear from the fact that they made amendments not only to 2A.2.2, but also to 2A.6.2, which is in the context of domestic violence, where they again listed strangulation as an aggravating circumstance. Should we — do you think that we should delay our decision in this matter pending the Supreme Court's decision in Beard? I don't think it's necessary to do that. I don't — I think that — I think that the question in that case is whether we go beyond — go beyond Kaiser. Whether we — the commentary — the guidelines commentary should go beyond Kaiser in terms of the deference applied to the guidelines. I don't think there's any question that the guidelines commentary requires at least the deference owed under Kaiser. And I think because we succeed under Kaiser, I don't think it's necessary to put this off. Although the court, of course, could. And not for very long. They granted cert in April. I thought the question was whether Stinson still correctly stated the rule for deference to the commentary. I'm sorry. So I thought the question in Beard was whether Stinson still correctly states the rule for the deference owed to the guidelines, which I guess is similar to what you're saying with respect to Kaiser. Yeah. I do think — and this may be what Judge Christian was saying — is I think that delay, they won't hear the case until — until the fall and then — and then it could take them — But this — but this person's incarcerated now. Correct. And the sentence is what? Eighteen months. I think it's — I was going to say, so he will still be in prison. So, okay. And on that point, the guidelines themselves say the most recent amendments are not meant to be applied to people who are already sentenced. Right? Correct. If this were a do-over, it would be with the — with the existing guideline. Correct. Yeah. So I think we're all getting to the same place in slightly different ways, but that's fine. But I'm not sure we — did we — did we interrupt your sidetracker question? No. Thank you.  I don't think we have any additional questions. Great. Thank you very much. Okay. Thank you. We've saved your couple minutes. Thank you, Your Honor. You bet. So I just want to focus on the actual definition in Application Note 1, which I think can be read our way as well as it — so it's a felonious assault that involves — and then it says, et cetera, and then strangulation. How does that cut your way? So I read that as — Strangling, suffocating, or attempting to strangle or suffocate. Right. I think that because it's defining a guideline section, I think that that can be understood as it has to be a charged element of the offense, right? Because we're talking — it's important — we're talking about a guideline section, not a specific offense characteristic. That's a huge difference under the guidelines, right? The guideline provision has to deal with an offensive conviction, right? And you can look at that when you look at the — you know, whether something's sufficiently analogous, right? You know, if there is no, you know, guideline provision especially attached to it, you look at the — whether it's similar to the charged elements. But you said before that you thought this was designed to deal with — I pled to the lesser offense, and I wasn't convicted of the greater offense. So how can we then restrict it to the crime of conviction? Well, because that's just how the — the guideline provision itself can be understood by what the charged offenses are. I understand that. But so you said this was meant to apply to the typical scenario where somebody gets charged with A and B, pleads to B, therefore is not convicted of A. But you said under that circumstance it would apply. But the elements of A had not been established in that circumstance either. The crime of conviction, which you keep referring to, is only the lesser crime. Right, right, right. There's a difference between the offensive conviction and then — and what the charged elements of an offense are. Of course there is. Right? Of course there is. But I'm trying to figure out why you think the guideline cross-reference is limited to the elements of the offense when you've already said that you don't have to be convicted of an offense for the cross-reference to apply. Because it's important that we have charges that — these offenses that Congress has laid out, right, and then they're assigned to different guideline provisions by the Sentencing Commission. And that's what we should be focused on when it comes to finding out what the correct guideline provision is. I ask you the same question I ask your friend on the other side, which is, do you think we should delay pending the decision in Baird? No, Your Honor. He is in custody. His projected release date is October 26th of this year. So I think if we wait, it would be harmless at that point. Thank you. Thank you both for your argument. We'll take that matter under advisement.
judges: CHRISTEN, HURWITZ, BADE